JONES <em>against</em> BAKER and WESTERVELT.

A writ of    ACTION on the case; tried at the New York circuit, in
conspiracy. at March, 1825, before DUER, C. Judge.
the common
law, lay only
in two cases: conspiracy to indict for treason, or a capital felony, the party being acquitted.

In such case, two defendants, at least, must not only be joined in the writ; but to sustain
it as to one, both must be convicted. One cannot be convicted and another acquitted, as in
other actions for tort.

In all other cases of conspiracy, the remedy is by action on the case; and one may be
convicted, and the other acquitted.

In these actions, actual conspiracy need not be proved; it may be inferred from circum-
stances; among which are the acts of the parties in doing the injury which was the object
of the conspiracy.

J., a merchant tailor was engaged in carrying on a profitable trade in his line of business,

*The declaration stated that the plaintiff was a merchant UTICA, tailor at New York, engaged in certain trade as such, to August, 1827. New Orleans, and in possession of certain information in relation to that trade. That the defendant, Westervelt, was his foreman; and in possession of his secrets, his patterns and books; and that the defendants conspired to injure, and did injure the plaintiff, by interfering with his trade to New Orleans, (specifying how,) to the plaintiff's damage, &c.

Jones
v.
Baker.

Plea, the general issue.

The evidence was to the following effect: Westervelt was the foreman of the plaintiff, who was engaged in making clothes for the New Orleans market. This trade could not be carried on to advantage, without a knowledge of the colors and goods most saleable at New Orleans; and that could not be obtained without going or sending there. The plaintiff went to New Orleans in the fall of 1822, and left Westervelt in possession of his business, as his foreman. Westervelt cut the clothes, had them made, and sent them to the plaintiff for sale. During his absence, Baker proposed to Westervelt to cut clothes for him, which he, at first, declined; but afterwards agreed to do, and did do. Westervelt had a shop of his own; but cut many of Baker's goods in the plaintiff's shop. The plaintiff, on his return, complained of their sending clothes to New Orleans, to sell under his nose; though he said that he thought Westervelt did not mean to injure him. Baker saw the plaintiff's books, from which some of the witnesses were of opinion a knowledge of the trade might be obtained. One parcel of the plaintiff's goods were not sent in season; and at another time goods were sent for Baker, and the plaintiff's remained behind. Baker's goods were packed, and the invoices made at the plaintiff's shop: and when it was announced that the plaintiff had arrived, and would be up in

from New York to New Orleans, the successful prosecution of which depended on a knowledge of certain things, known to so few, that his gains were very large. B. conspired with J.'s foreman, in J.'s absence, to obtain the secrets of the business; did obtain them; and was, in consequence, enabled to rival J. in his trade; and J. was otherwise injured. *Held*, that an action on the case lay against B., and the journeyman, at the suit of J. for the conspiracy; and that one of the defendants might be convicted, and the other acquitted.

In such a suit, the damage is the gist of the action, not the conspiracy.

UTICA,       a few minutes, there was great consternation in the shop.
August, 1827. Baker's goods were hastily taken away; he saying he was
Jones        afraid that the plaintiff would kick them in the street. The
v.           plaintiff's business was very extensive; amounting to from
Baker.       50 to 60 thousand dollars *per annum*. In 1822, Wester-
[*447]       velt cut for the plaintiff to an amount of from $15,000 to
$20,000, and for Baker, from $7,000 to $8,000. One of the
plaintiff's invoices of $5,236 98, were shipped as late as the
10th of January; too late for the season.

Upon this testimony, the judge nonsuited the plaintiff,
on the ground that there was no legal proof of a conspi-
racy.

*J. Anthon,* for the plaintiff, now moved to set aside the
nonsuit; and for a new trial.

He said that, in all cases, where a man has a temporal
loss or damage by the act of another, he may have an ac-
tion on the case to be repaired in damages. This is not a
technical action of conspiracy; but an action on the case
in nature of a conspiracy. Evidence of conspiracy is not
essential, therefore. The damage is the cause of action;
and the conspiracy mere matter of aggravation. (1 Wils.
210; 1 Saund. 230, *note,* (4).) As in all other actions on
the case, one may be convicted, and the other acquitted.

The question in this case was entirely for the jury; and
the judge erred, therefore, in nonsuiting the plaintiff. Here
was a loss clearly established. The necessary information
for conducting the plaintiff's business, could be acquired
only by going to the south, and expending time and
money. This the defendant, Baker, acquires, without the
usual labor; and after the acquisition, he employs the
plaintiff's own shop in conducting the business. Here was
a direct invasion of the plaintiff's right; and the whole
transaction clearly forms the subject of a suit at law. (4
Burr. 2345; Com. Dig. Action on the case, (A.) It is no
objection to this action on the case, that it is new in the
particular instance. (3 T. R. 63; 2 M. & S. 415.) If evi-
dence of conspiracy was necessary, here was, at least, suffi-
cient to go to the jury.

*P. W. Radcliff,* contra. This action is admitted to be novel in the instance. I think it so in principle. I know there appears something of personal impropriety in the defendant's conduct; for we are here bound to stand on the evidence of the plaintiff alone. But in the best view, it is *but the case of a man who had made great gains by a particular craft; and interfering to punish another who comes in to share in the profits of a trade, which is rightly open to all. To sustain an action, the plaintiff was bound to prove an injury remediable at law, for which a *joint* action could be maintained against the defendants. No such proof was given. However culpable Westervelt may have been, owing to the relation in which he stood to the plaintiff, Baker was subjected to no obligations of confidence; to no other legal obligation, which has been violated. One was a foreman : the other was a stranger. The action is not for seducing the servant. If so, it would not lie against the servant himself, but against the seducer only. If any joint action would lie, it is trespass for invading the plaintiff's possession; for using his shop without license. Where the act is, in itself, unlawful, no conspiracy need be shown. But where, as here, the act was lawful, actual conspiracy must be shown, to give it a contrary character. Where the act is itself unlawful, one may be found guilty, and the other acquitted. (1 Ld. Raym. 379; 1 Str. 195.) But it is otherwise, in the very nature of the case, where conspiracy is the gist of the offence. (Ibid.) This implies essentially the acts of more than one. (Vin. Ab. Conspiracy, (A); Com. Dig. Action on the case for a Conspiracy, (C); Finch's Law, 305; Esp. Dig. 530.) Conspiracy is not predicable of such a case as the plaintiff made out in proof. It rested on actual conspiracy, proof of which entirely failed.

Neither the declaration nor proof presents a case on which the court can give judgment. The plaintiff expressly admitted the innocence of one of the defendants.

*Curia,* per SAVAGE, Ch. J. There is a difference between an action for a conspiracy, upon a writ of conspiracy, and

UTICA,
August, 1827

Jones
v.
Baker.

[*448]

an action on the case in nature of a conspiracy. The former must be against two or more; the latter may be against one. In the former, if all but one are acquitted, the plaintiff cannot have judgment; for his action fails; but it is otherwise in the latter action. (Com. Dig. Action upon the case for a Conspiracy, (C. 1.)

[*449]

*A writ of conspiracy, properly so called, did not lie, at the common law, in any case but where the conspiracy was to indict the party either of treason or capital felony, and a verdict had been rendered in his favor; and such writ must be brought against two at least. All the other cases of conspiracy in the books, were but actions on the case; though it was usual, in such actions, to charge a conspiracy. Yet, they might be brought against one. (1 Saund. 230, note.(4) *Saville* v. *Roberts*, Ld. Raym. 378, 379.) *Saville* v. *Roberts*, was an action against one only, for procuring the plaintiff to be indicted of a riot. It was an action on the case; and was held to lie. The case of *Subley* v. *Mott and another*, (1 Wils. 210,) was a special action on the case for a malicious prosecution. After verdict against one only, a motion was made in arrest; in answer to which, it was argued, that this was an action on the case founded on a wrong; where, if any one be found guilty, the plaintiff should have judgment. And of that opinion was the whole court; and they considered such to be the settled law since the case of *Skinner* v. *Gunton and others*, (1 Saund. 230.)

As to actual proof of conspiracy; in *Rex* v. *Cope and others*, (1 Str. 144,) the proof was, that the husband, wife and servants, had several times given money to the prosecutor's apprentices to put grease into the paste, and thus spoil the cards. The prosecutor was a card maker. There was no other evidence of communication. The defendants were also card makers; and had, by turns, given the money; which chief justice Pratt held sufficient evidence of conspiracy.

In this case, I think the judge erred in requiring further evidence of conspiracy. The circumstances shown, were

sufficient to justify the finding of one.  An actual conspi-
racy can seldom be proved unless by circumstances.

But if there be no evidence of conspiracy, the plaintiff
may recover against one alone, where there is sufficient
evidence against him ; though not enough against the other.
This being an action founded in tort, one defendant *may
be found guilty, and the other have a verdict in his favor.
The damage here is the gist of the action; not the conspi-
racy.  The plaintiff showed damage; and if it resulted
from the wrongful acts of the defendants, or either of them,
the plaintiff was entitled to recover.[1]

The nonsuit should, therefore, be set aside, and a new
trial granted.

Rule accordingly.

SUTHERLAND, J., not having heard the argument, gave
no opinion.

[1] An action on the case in the nature of a conspiracy, will lie against
one; or, if brought against many, all may be acquitted but one.  *Eason* v.
*Westbrook*, 2 Murph. 329.

In an action on the case for a conspiracy against A and B, the plaintiffs,
in their declaration, alleged that they and A had been co-partners in trade,
and that A had sold out to them his interest in the concern, and that the
plaintiffs had agreed to pay all the debts against the firm, and that, after the
dissolution, A had conspired with B to defraud them ; and for that purpose,
A made and delivered to B certain notes in the name of the firm, and ante-
dated them before the dissolution, and delivered them to B, with the "intent"
that he should present them for payment, which was afterwards done, and
the note paid, the said B representing that the notes were just demands, and
given to him at the time of their date, for goods sold by him to the firm.
The judge charged the jury, that, "if they found that the notes were fabri-
cated by the defendants after the dissolution of the partnership, with a view
to make the defendants chargeable with them, as stated, and B then, in
furtherance of the original design, induced the plaintiffs to pay the same, with-
out disclosing the facts in relation to them, it was such a fraud as would en-
title the plaintiffs to a verdict."  Held, that there was no error in the charge.
*Sheple* v. *Page*, 12 Verm. 519.

The gist of the action is the damage to the plaintiff, and the conspiracy.  Id.

Where a conspiracy is charged in a declaration between two or more, the
acts of one, in pursuance of the conspiracy, are the acts of all, in legal con-
templation, and may be alleged, in such case, in the declaration, as the indi-
vidual acts of the one.  Id.

It was alleged in a declaration that the plaintiff and R were partners, and

UTICA,
August, 1827.

Jones
v.
Baker.

[*450]

UTICA,
August, 1827.

Tucker
v.
Ladd.

that the defendant covenanted with them to furnish them with money to be used as capital in their partnership business; that the defendant did so furnish money during a certain time, and afterwards, "maliciously contriving and intending to injure and ruin the plaintiff, and confederating and conspiring with said R. to injure and ruin the plaintiff in his business, and to break up said partnership, &c., refused any longer to furnish capital according to his covenant, and brought a suit against said partners, to recover the money furnished to them by him, and recovered judgment against them, and took out execution, and caused their stock in trade to be sold on said execution, at a great sacrifice, to pay the same," and that said R, in pursuance of said confederacy, had refused to join with the plaintiff, in a suit against the defendant for a breach of said covenant. Held, that the plaintiff, in order to maintain his action, must prove not only that the defendant had broken his covenant, but that he did so with the intent, and pursuant to the confederacy as set forth in the declaration. *Talbot v. Cains*, 5 Met. 520.

To charge persons with a conspiracy to cheat and defraud a third person, there must be a collusion and participation in the scheme or its execution; mere silent observation and acquiescence are not sufficient. *Brannock v. Bouldin*, 4 Iredell, 61.

In an action on the case, in the nature of a conspiracy, charging that the defendants combined to injure the plaintiff's credit, it is necessary for the plaintiff to aver, in his declaration, the means by which such injury was intended to be effected. *Setzar v. Wilson*, 4 Iredell, 501.

It is no ground to support such an action, that the defendants, having an execution levied on the plaintiff's property, required that the sale should be for specie. Id.

Nor can such an action be maintained upon the ground that the defendants had, by fraud, obtained from the plaintiff the assignment of a judgment, and the transfer of a bond not indorsed. Id.

Nor on the ground that the defendants had fraudulently procured a conveyance of a slave from the plaintiff. Id. (4 U. S. Dig. pp. 392, 393, tit. *Conspiracy*.)